IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SANDRA LYNCH, | * | |
|    *Pro Se* Plaintiff, | * | |
|    v. | * | Civil Action No.  RDB-06-1061 |
| AFFILIATED COMPUTER SYSTEMS, | * | |
|    Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This employment discrimination action arises out of a Complaint filed by Sandra Lynch ("Lynch" or "Plaintiff") against her former employer, Affiliated Computer Systems[1] ("ACS" or "Defendant").  Lynch alleges that she was discharged in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et. seq.* ("ADA" or "the Act"). Pending before this Court are the parties' cross-motions for summary judgment.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

BACKGROUND

This Court views the facts in a light most favorable to the Plaintiff in light of its ruling. Plaintiff Sandra Lynch ("Lynch") was employed full-time as a customer service representative for Affiliated Computer Systems ("ACS"), a company offering "diversified business processes

---

[1] The Defendant's official name appears to be Affiliated Computer Services, Inc. However, because neither party has raised this issue, the name entered in the Complaint will be used throughout this Memorandum Opinion.

and information technology outsourcing solutions to public and private clients." (Starkey Decl. ¶ 1.) She received generally positive performance evaluations throughout her employment with ACS.

In April of 2003, Lynch was diagnosed with valve vicosis, a condition which causes diminished blood flow through her right leg and painful swelling.[2] Her doctors prescribed anti-swelling and pain medications. Lynch requested and was granted twelve weeks of leave time under the Family Medical Leave Act ("FMLA"), as amended, 29 U.S.C. §§ 2601, *et seq*. She returned to work in July of 2003 and was able to work full-time until December of that year. Between December 22, 2003 and April 21, 2004, Lynch took approximately four more weeks of FMLA leave. She was required to call her supervisor and the human resources department each day that she stayed home. Beginning on April 21, 2004, Lynch telephoned her supervisor and indicated that she was staying home from work. She never returned to work again, even after her maximum allowable FMLA leave was exhausted in June of 2004. Finally, on July 15, 2004,[3] Lynch informed her supervisor, Rick Brown ("Brown"), that she had would be receiving social security disability payments and asked if she could work a part-time schedule. Brown replied that there were no part-time positions available. He also asked her if she was resigning, to which Lynch responded no. Brown then informed her that he had been instructed to tell her to resign. Lynch was officially terminated on August 25, 2004 for "job abandonment." (Starkey Decl. ¶

---

[2] Defendant notes that the condition is probably called venous varicosity. (Def.'s Mem. Supp. Summ. J. 2 n.1.) The precise medical name of Plaintiff's condition is irrelevant for the purposes of this analysis.

[3] The Complaint alleges that this conversation with Rick Brown occurred on July 15, 2005, not 2004. (Compl. ¶ 4.) However, in her deposition, Lynch verified that the correct date was July 15, 2004. (*See* Lynch Dep. 89:24-90:3.)

Case 1:06-cv-01061-RDB   Document 22   Filed 04/17/07   Page 3 of 9

11.)

On November 22, 2004, Lynch filed an EEOC charge with the Maryland Commission on Human Rights ("MCHR"), alleging that she was discharged because of a disability, valve vicosis. Almost a year later, on October 14, 2005, Lynch and her husband filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Maryland. In the portions of the bankruptcy petition requesting information about all assets, as well as pending administrative and judicial proceedings involving the petitioners, Lynch did not mention the employment discrimination action she had initiated with the MCHR. (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. B.)

Lynch alleges in her Complaint that she received a right to sue letter on January 25, 2006. On April 27, 2006, proceeding in proper person, Lynch filed the subject Complaint against ACS in this Court.[4] Defendant filed a Motion for Summary Judgment (Paper No. 16) on November 20, 2006, arguing that Plaintiff's claim should be judicially estopped because she did not disclose it in bankruptcy proceedings and because it lacked merit. Plaintiff cross-filed a Motion for Summary Judgment (Paper No. 18) on November 27, 2006, alleging that she is entitled to judgment as a matter of law.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

---

[4] Defendant initially argues that Plaintiff's suit is time-barred because she did not file it within ninety days of receiving her right to sue letter, pursuant to 20 U.S.C. § 2000e-5(f)(1). This Court need not address the equities of a pro se Plaintiff being time-barred and the issues of appropriate notification to her for the filing of a lawsuit within that ninety-day period. It is undisputed that she filed on the *ninety-second* day. Viewing all facts and inferences in the light most favorable to the Plaintiff, this Court has addressed the merits of her case. Thus, this Court need not address the issue of this cause of action being time-barred *ab initio*.

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Id.* at 248. Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

Where, as here, both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

DISCUSSION

**I.      Judicial Estoppel**

Defendant Affiliated Computer Systems ("ACS") first argues that Plaintiff Sandra Lynch's ("Lynch") claim is precluded under the equitable theory of judicial estoppel. The Fourth Circuit Court of Appeals has articulated four factors a court must consider before applying the theory of judicial estoppel:

> (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997)).

Applying these factors to the facts of this case, this Court does not find a sufficient basis for estopping Lynch from bringing her claim. Defendant is correct that Plaintiff failed to mention that she had an employment discrimination claim during the Chapter 13 bankruptcy proceedings she initiated on October 14, 2005. Specifically, she did not list the pending administrative claim in Schedule B of the petition, which

> requires a debtor to list "all personal property of the debtor of whatever kind." The purpose of the disclosures in these schedules is to allow parties in interest to rely on them during administration of the case. Property of a bankruptcy estate is defined broadly to include: "all legal or equitable interests of the debtor in property as of commencement of the case." 11 U.S.C. § 541(a)(1). This includes all causes of action that could be brought by a debtor.

*USinternetworking, Inc. v. Gen. Growth Mgmt.* (*In re USinternetworking, Inc.*), 310 B.R. 274, 281 (Bankr. D. Md. 2004). She also failed to list the pending employment discrimination claim

5

in the Statement of Financial Affairs, a form that must be filled out and submitted as part of a bankruptcy petition, where it asks the debtor to identify any "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Def.'s Mem. Supp. Summ. J. Ex. B.)  However, contrary to the Defendant's argument, there is no indication that the omissions of this *pro se* Plaintiff were intentional or designed to assert a different position than the ones at issue in this suit.  The purpose of judicial estoppel is to "prevent litigants from playing 'fast and loose' with the courts-- to deter improper manipulation of the judiciary." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998) (quoting *Folio v. City of Clarksburg, West Virginia*, 134 F.3d 1211, 1217 (4th Cir.1998)).  In the absence of any direct evidence that Lynch intended to deceive the Bankruptcy court, this Court will not apply the doctrine of judicial estoppel.

**II.     Disability Discrimination**

Both Lynch and ACS contend that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law on her Americans with Disabilities Act ("ADA") claim.  Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006).  In the absence of direct evidence of discrimination, the Plaintiff must satisfy the three-step burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, she must present enough evidence to prove a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000).  Second,

6

once she establishes a *prima facie* case, the burden shifts to ACS to produce evidence that the adverse employment action was taken against Lynch "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Third, Lynch is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

In order to meet her initial burden of establishing a *prima facie* case under the ADA, Lynch must present evidence to "show: '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Overstreet v. Calvert County Health Dep't*, 187 F. Supp. 2d 567, 572 (D. Md. 2002) (quoting *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).  For the following reasons, this Court finds that Plaintiff has not met her burden of establishing all three elements of a *prima facie* case of disability discrimination.

First, the ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Plaintiff has offered no medical proof or documentation of her disorder, valve vicosis, or how it "substantially limits" a "major life activity." However, she testified in her deposition that the condition causes her right leg to swell and that it was "quite painful." (Lynch Dep. 74:12-16, 78:6-9.)  She further testified that it prevents her from sitting still for more than two hours or standing for more than fifteen minutes. (*Id*. at 100:1-11.) Both sitting and standing can

be "major life activities" within the meaning of the ADA. 29 C.F.R. App. Part 1630 (2007). Although Plaintiff should have submitted documentation of her disability, the symptoms she describes are sufficient to create a *prima facie* showing of a disability.

As to the second element, however, Plaintiff cannot show that she was a "qualified individual" for her job as a customer service representative. She missed approximately seven months of work during 2003 and 2004, staying home even after she exhausted her FMLA leave. (Lynch Dep. 44:11-20, 84:14-22, 87:4-22.) There is no evidence that she ever requested accommodation at work. (Starkey Decl. ¶ 13.) Instead, she asked her supervisor, Rick Brown, if she could assume a part-time schedule. (Lynch Dep. 90:11-14.) There is nothing in the record to indicate that Plaintiff lacked the qualifications to be a customer service representative. However, there is ample evidence that she was unable to sit for an eight-hour day, an essential function of her full-time job. Accordingly, she has not met her burden with respect to the second element of the *prima facie* case of disability discrimination.

Third, even if the second element were satisfied, Plaintiff cannot demonstrate that she was fired because of her disability. According to Charles Starkey, a Workplace Partner in ACS's Human Resources Department, Lynch was discharged for "job abandonment." (Starkey Decl. ¶ 11.) She took several approved leaves of absence pursuant to the Family Medical Leave Act. (Lynch Dep. 44:11-20, 84:14-22, 87:4-22.) However, she also remained home from work after her FMLA leave was exhausted and requested a part-time schedule once her social security disability payments were confirmed. (Lynch Dep. 90:6-14.) ACS had no part-time jobs available, and it was questionable whether Plaintiff would have even been able to work a part-time schedule. (Starkey Decl. ¶¶ 14-15.) Thus, there is simply insufficient evidence to meet the

third element of a *prima facie* case.

In sum, Lynch has not met her burden of establishing a *prima facie* case of disability discrimination. Accordingly, she has failed to present a genuine issue of material fact as to her ADA claim, and ACS is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is hereby GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

## CONCLUSION

In conclusion, for the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED. A separate Order and Judgment follows.

/s/
Richard D. Bennett
United States District Judge

Dated: April 17, 2007